UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP BRYDE, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>GENERAL MOTORS, LLC,<br><br>            Defendant. | Case No. 16-cv-02421-WHO<br><br>**ORDER DENYING MOTION TO STRIKE AND MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 22, 24 |

## INTRODUCTION

Plaintiffs bring this class action suit against General Motors, LLC ("GM") for a variety of claims stemming from an alleged airbag defect. GM moves to strike plaintiffs' prayer for injunctive relief, arguing that it amounts to a recall and is preempted by the Motor Vehicle Safety Act. Although GM has some support for its argument from courts outside of this circuit, district courts in California have consistently rejected those decisions and found no preemption. The decisions holding no preemption are more persuasive; GM has not raised any arguments that those decisions did not address. GM's motion to strike is DENIED.

GM also moves to dismiss plaintiffs' fraudulent omission claims for failure to: (i) show GM had knowledge of and a duty to disclose the alleged defect; (ii) demonstrate reliance on a particular advertisement; (iii) plead a plausible injury; and (iv) meet Rule 9(b)'s particularity requirement. I conclude that plaintiffs have stated plausible fraudulent omissions claims. GM also moves to dismiss the claims for breach of the implied warranty of merchantability, but plaintiffs have sufficiently alleged that the Class Vehicles are unfit for their ordinary purpose and that the third-party beneficiary exception to the vertical privity requirement applies. GM's motion to dismiss is DENIED.

United States District Court<br>Northern District of California

# BACKGROUND

## I.  FACTUAL BACKGROUND

Plaintiffs bring this action on behalf of themselves and all similarly situated persons who purchased or leased 2010 and 2011 Chevrolet Camaro vehicles ("Class Vehicles") in the United States.  First Amended Complaint ("FAC") (Dkt. No. 21) ¶¶ 1-2.  GM is "responsible for the design, manufacture, distribution, marketing, sale and lease of the Class Vehicles."  *Id.* ¶ 22.

### A.  The Alleged Airbag Systems Defect

Plaintiffs allege that one or more design or manufacturing defects in the Class Vehicles' airbag systems can cause the right front passenger airbag to fail to deploy when it otherwise should.  *Id.* ¶ 2.  "Numerous owners have reported their airbag warning lights turning on and off when a passenger is seated in the vehicle, indicating that the airbag may fail to deploy in a crash."  *Id.* ¶ 28.  In fact, plaintiffs copied into the FAC seventy-one consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") regarding the need to replace passenger airbag sensors in the Class Vehicles.  *Id.* at ¶ 36.  The complaints range in date from August 31, 2010 to July 1, 2016.  Request for Judicial Notice in Support of Motion to Dismiss ("MTD RJN") (Dkt. No. 25), Exs. 1-8, 10; Declaration of Gregory Oxford (Dkt. No. 26) ¶ 12.[1]  This defect "is particularly dangerous because it is not obvious to consumers, as it often triggers the illumination of warning lights which some consumers do not understand and/or notice."  *Id.* ¶ 4.  Consequently, consumers unknowingly transport others "in a front passenger seat which lacks one of the most basic and important vehicle safety features:  a fully operational frontal airbag."  *Id.*

---

[1] GM's request for judicial notice of Exhibits 1 through 8, 10, 12, and 13 is GRANTED.  MTD RJN.  Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one not subject to reasonable dispute because it is either (1) "generally known within the trial court's territorial jurisdiction," or (2) "can be adequately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(d).  A court may "take judicial notice of undisputed matters of public record."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).  A court may also consider documents not attached to a complaint "if no party questions their authenticity and the complaint relies on those documents."  *Id.*  I take judicial notice of Exhibits 1 through 8 and 10 as they are records of the consumer complaints filed on NHTSA's website and cited in plaintiffs' FAC.  I also take judicial notice of Exhibits 12 and 13 because they are copies of the technical service bulletins cited in plaintiffs' FAC.  The request for judicial notice of Exhibits 9, 11, and 14 is DENIED because the FAC does not rely on that particular consumer complaint, technical service bulletin, or NHTSA website.

United States District Court
Northern District of California

**B.  Experiences of the Named Plaintiffs**

Plaintiff Jennifer Waters bought a new 2010 Chevrolet Camaro from one of GM's dealers in May 2010.  *Id.* ¶ 15.  One month prior, Waters conducted "extensive research," including viewing the vehicle on GM's website.  *Id.*  At the time of purchase, she test drove the vehicle, reviewed the "Monroney" sticker on the vehicle's window, and spoke to the dealer sales representative about the vehicle.  *Id.*  Waters also reviewed a mailed flyer prepared by GM or one its dealers and "touted the vehicle's positive attributes."  *Id.*  In May 2014, the vehicle's right front passenger airbag indicator light began to malfunction.  *Id.* ¶ 16.  The vehicle was taken to a third-party that found the passenger airbag sensor needed replacement at a cost of $500.  *Id.*  Waters declined the repair.  *Id.*  In February 2016, the vehicle was taken to one of GM's dealers.  *Id.*  This dealer also noted that the passenger airbag sensor needed replacement "at considerable expense."  *Id.*  Waters paid approximately $115 for the diagnosis and again declined the repair.  *Id.*

Plaintiff Philip Bryde bought a new 2010 Chevrolet Camaro from one of GM's dealers in November 2010.  *Id.* ¶ 12.  At the time of purchase, Bryde spoke with the dealer sales representative about the vehicle and requested a brochure, but the dealer had none.  *Id.*  In or around 2014, the vehicle's right front passenger airbag indicator light began to malfunction.  *Id.* ¶ 13.  In August 2014, the vehicle was taken to the dealer for servicing and "a history code for passenger sensor was found."  *Id.*  No repairs were made.  *Id.*  The issue later recurred and the vehicle was brought back to the dealer in September 2014 and Bryde paid $699.56 for a replacement of the passenger airbag sensor.  *Id.*

Plaintiff Alvin Northington bought a new 2011 Chevrolet Camaro from one of GM's dealers in December 2010.  *Id.* ¶ 18.  At the time of purchase, Northington test drove the vehicle, reviewed the "Monroney" sticker on the vehicle's window, and spoke with the dealer sales representative about the vehicle.  *Id.*  Within three years, the vehicle's right front passenger airbag indicator light began to malfunction.  *Id.* ¶ 19.  The vehicle was then taken to one of GM's dealers, which indicated that the passenger airbag sensor needed to be replaced.  *Id.*  Northington paid approximately $100 for the repair.  *Id.*

United States District Court
Northern District of California

### C. GM's Alleged Knowledge of and Failure to Disclose the Airbag Defect

Plaintiffs allege that GM had knowledge of the airbag defect and associated safety risks through its own testing and analysis data, consumer complaints made to GM or its dealers, aggregate warranty data, and repair order and parts data. *Id.* ¶ 29. GM also had knowledge from several technical service bulletins it issued, starting in 2009, regarding the airbag lights and sensors. *Id.* ¶¶ 30-34. Despite this knowledge, GM failed to notify consumers, recall the Class Vehicles to repair the defect for free, or offer to reimburse Class Vehicle owners or leaseholders for the costs of repair. *Id.* ¶¶ 4, 41. Through the service bulletins, GM also instructed its dealers not to replace system components, allegedly to avoid the costs during the warranty period. *Id.* ¶ 34. After the warranty period ended, GM and its dealers recommended costly repairs, including replacement of various components. *Id.* If plaintiffs had known about the alleged defect, they would not have bought or leased the Class Vehicles, or would have paid less. *Id.* ¶ 8.

## II. PROCEDURAL BACKGROUND

On May 4, 2016, plaintiffs filed a class action complaint. (Dkt. No. 1). GM filed a motion to dismiss (Dkt. No. 13) and a motion to strike (Dkt. No. 16). Plaintiffs responded by filing their FAC, asserting five claims: (1) violations of the California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, *et seq.*); (2) violations of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq.*); (3) fraudulent omission; (4) breach of implied warranty under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*) and California Commercial Code § 2314; and (5) breach of Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*). GM then filed the present motion to strike plaintiffs' request for injunctive relief (Dkt. No. 22) and motion to dismiss the FAC (Dkt. No. 24).

## LEGAL STANDARD

## I. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H.*

*Robins Co*., 697 F.2d 880, 885 (9th Cir.1983).  Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  In addition, courts often require some showing of prejudice by the moving party before granting a motion to strike.  *Hernandez v. Dutch Goose, Inc.*, No. 13-cv-03537, 2013 WL 5781476, at *5 (N.D. Cal. Oct. 25, 2013).  In resolving a motion to strike, I view the pleadings in a light most favorable to the nonmoving party.  *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057.

## II.  MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the counterclaimant must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8."  *United States ex rel. Lee v. Corinthian Colls*., 655 F.3d 984, 992 (9th Cir. 2011).

In deciding whether a claim has been stated upon which relief can be granted, the court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to

accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

## I.  MOTION TO STRIKE

GM moves to strike plaintiffs' prayer for relief on federal preemption grounds.  Plaintiffs request an order "[t]hat Defendant provide notice, in a form pre-approved by Plaintiffs, to all Class Members and, in the notice, offer to repair without charge, the Airbag Defect contained in the Class Vehicles."  FAC ¶ 111(a).  GM argues this request amounts to a recall and, therefore, conflicts with the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30101 *et seq.*[2]  MTS at 9.[3]  GM also moves to strike three allegations supporting this request.[4]

### A.  Applicability of Rule 12(f) to Requests for Injunctive Relief

As a threshold matter, plaintiffs argue that Rule 12(f) cannot be used to strike a prayer for injunctive relief.  MTS at 2.  GM responds that the request may be struck under Rule 12(f) as "impertinent."  Oppo. to MTS at 2.  But even if it is procedurally improper, GM requests that I treat the motion to strike as a motion to dismiss.  *Id.* at 3.

The Ninth Circuit has held that Rule 12(f) "does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010).  Some district courts have extended this rule to requests for injunctive relief.  *See Grayson v. Cty. of Marin*, No. 14-cv-5225-JST, 2015 WL 720830, at *2 (N.D. Cal. Feb. 18, 2015) ("Although *Whittlestone* did not specifically address motions to strike requests for injunctive relief, the Court concludes that the Ninth Circuit's reasoning in *Whittlestone* extends to the prayer for relief at issue here."); *In re*

---

[2] GM's request for judicial notice of the Safety Act's legislative history is GRANTED.  (Dkt. No. 23).

[3] All MTS page citations refer to the ECF-generated page number.

[4] These allegations include:
FAC ¶ 3:  "has failed to notify consumers and offer to fix the problem"
FAC ¶ 7:  "has not recalled the Class Vehicles to repair the Airbag Defect"
FAC ¶ 41:  "Defendant has not recalled the Class Vehicles to repair the Airbag Defect"

United States District Court
Northern District of California

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.* ("*In re Toyota*"), 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) ("Rule 12(f) does not provide proper grounds to strike Plaintiffs' request for injunctive relief.").

Regardless, I "will proceed with the preemption analysis because, even if [GM] argues that certain claims should be dismissed under Rule 12(b)(6) on preemption grounds," I find that GM "has failed to show that Plaintiffs' request for injunctive relief or any claims underlying Plaintiffs' requested relief are preempted by the Safety Act." *In re Toyota*, 754 F. Supp. 2d at 1195.

### B.  Plaintiffs' Requested Relief is Not Preempted by the Safety Act

Under the Supremacy Clause, "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).  Preemption may be express or implied. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983).  There are two types of implied preemption: field preemption and conflict preemption.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  GM only argues that there is conflict preemption.  MTS Reply at 4.

### 1.  The Presumption Against Preemption Applies

The parties dispute whether a presumption against preemption applies.  "In all pre-emption cases, and particularly in those in which Congress has legislated in a field in which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless there was the clear and manifest purpose of Congress."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks and citations omitted).   "So long as Congress has set foot in 'a field which the States have traditionally occupied,' the presumption applies."  *McDaniel v. Wells Fargo Investments, LLC*, 717 F.3d 668, 675 (9th Cir. 2013) (citing *Wyeth*, 555 U.S. at 565).  But "an 'assumption' of nonpreemption is not triggered when the State regulates in an area where there has been a history of significant federal presence."  *United States v. Locke*, 529 U.S. 89, 108 (2000).

The parties offer different characterizations of the field at issue here.  GM argues the field is that of "safety defect notification and recalls."  MTS Reply at 5.  It emphasizes that prior to the 1974 Amendments to the Safety Act, which provided NHTSA with the authority to order recalls, no state had created a safety defect recall remedy.  *Id.* at 1, 5-6; *see also In re Bridgestone/*

1   *Firestone, Inc. Tires Prod. Liab. Litig.* ("*In re Bridgestone/Firestone*"), 153 F. Supp. 2d 935, 943

2   (S.D. Ind. 2001) (noting the "total lack of any state-law-based recalls prior to the 1974 Safety

3   Amendments").  In contrast, plaintiffs define the field as "highway and street safety."  Oppo. to

4   MTS at 5.

5          Courts deciding this issue have come to different conclusions.  GM relies on *In re*

6   *Bridgestone/Firestone* where the court construed the field as that of "recalls" and declined to apply

7   the presumption against preemption. 153 F. Supp. 2d at 943.  But district courts in California have

8   held that "a recall is a remedy and not a substantive field of regulation, so a recall cannot be a

9   relevant area of substantive law."  *See Lassen v. Nissan N. Am., Inc.*, No. 15-cv-06491, 2016 WL

10  5868101, at *6 (C.D. Cal. Sept. 30, 2016); *see also Chamberlan v. Ford Motor Co.*, 314 F. Supp.

11  2d 953, 958-59 (N.D. Cal. 2004) (Wilken, J.).  These courts have instead found the field to be

12  "motor vehicle safety," an area traditionally regulated by the states,[5] and applied the presumption.

13  *See Chamberlan*, 314 F. Supp. 2d at 958; *Marsikian v. Mercedes Benz USA, LLC*, No. 08-cv-0487,

14  2009 WL 8379784, at *8-9 (C.D. Cal. May 4, 2009); *In re Toyota*, 754 F. Supp. 2d at 1197;

15  *Lassen*, 2016 WL 5868101, at *6.

16         Although GM correctly points out that none of the cited decisions applying the

17  presumption against preemption are binding precedent, I find them well reasoned and persuasive.

18  MTS Reply at 8.  The presumption against preemption applies here.

19                    **2.  There is No Conflict Preemption**

20         Conflict preemption occurs when it would be "impossible for a private party to comply

21  with both state and federal requirements, or where the state law stands as an obstacle to the

22  accomplishment and execution of the full purposes and objectives of Congress."  *English v. Gen.*

23  *Elec. Co.*, 496 U.S. 72, 79 (1990) (internal citations and quotation marks omitted).  There must be

24  "clear evidence" of an "actual conflict."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884-85

25  (2000).  "Speculative or hypothetical conflict is not sufficient:  only State law that 'actually

26

27  _____

28  [5] "In fact, '[i]n no field has . . . deference to state regulation been greater than that of highway safety regulation.'"  *Chamberlan,* 314 F. Supp. 2d at 958 (quoting *Raymond Motor Transp., Inc. v. Rice,* 434 U.S. 429, 443 (1978)).

United States District Court
Northern District of California

1    conflicts' with federal law is preempted." *Chamberlan*,  314 F. Supp. 2d at 957 (citing *Cipollone,*

2    505 U.S. at 516).  Because the presumption against preemption applies, GM bears "the burden of

3    showing that it was Congress' 'clear and manifest' intent to preempt State law." *Id.* at 962 (citing

4    *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).

5            GM argues that court-ordered recalls "conflict with and stand as an obstacle to the

6    accomplishment and execution of Congress' full purposes and objectives in creating a uniform

7    federal administrative (not judicial) process for determining whether or not safety-defect

8    notifications and recalls are necessary." MTS at 16.  Some district courts have held that recalls are

9    conflict preempted, finding that the Safety Act "sets forth a comprehensive scheme for prospective

10   relief from dangerous features in vehicles" and contains "a clear congressional intent to limit

11   encroachment on [NHTSA's] work." *In re Bridestone/Firestone*, 153 F. Supp. 2d at 944; *see also*

12   *Lilly v. Ford Motor Co.*, No. 00-cv-7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002); *Cox House*

13   *Moving, Inc. v. Ford Motor Co.*, No. 06-cv-1218, 2006 WL 2303182 (D.S.C. Aug. 8, 2006). *Cf.*

14   *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582 (D. Md. 2001) (finding field

15   preemption).

16           However, district courts in California have consistently rejected these arguments and held

17   that there is no conflict between a recall remedy and the Safety Act.  *See Kent v. DaimlerChrysler*

18   *Corp.*, 200 F. Supp. 2d 1208, 1215 (2002) (Spero, J.); *Chamberlan*, 314 F. Supp. 2d at 967;

19   *Marsikian*, 2009 WL 8379784, at *8-9; *In re Toyota*, 754 F. Supp. 2d at 1197; *Glenn v. Hyundai*

20   *Motor Am., et al.*, No. 15-cv-2052, 2016 WL 3621280 (C.D. Cal. June 24, 2016); *Lassen*, 2016

21   WL 5868101, at *6-7.

22           *Chamberlan*, in particular, sets forth an in-depth analysis of the Safety Act.  First, the court

23   rejected the argument that allowing plaintiffs to pursue a court-ordered recall would "frustrate the

24   Congressional objective of uniform administration of recalls."  314 F. Supp. 2d at 962.  The court

25   found that this argument mischaracterized Congress' intent.  *Id.*  *Chamberlan* pointed to the

26   Second Circuit's finding that "[t]he clearest possible expression of legislative purpose is provided

27   in the first section of the Act itself: 'the purpose of this chapter is to reduce traffic accidents and

28   deaths and injuries to persons resulting from traffic accidents.' 15 U.S.C. § 1381." *Chrysler Corp.*

*v. Tofany*, 419 F.2d 499, 508 (2d Cir. 1969).  After also citing Congressional reports, the court

concluded that safety is the primary objective of the Safety Act.  *Chamberlan*, 314 F. Supp. 2d at

962.  The court acknowledged that the Act's legislative history reflected an interest in uniformity

of motor vehicle safety regulation and administration of recalls, but characterized uniformity as "at

best a secondary goal."  *Id.*  Therefore, *Chamberlan* concluded:

> Allowing consumers to pursue State remedies for a dangerous
> manifold defect would likely advance the federal interest in highway
> safety.  Under such circumstances, some negative effect on
> uniformity is not sufficient to constitute the "clear evidence of
> conflict" with congressional goals required . . . for conflict
> preemption, much less to overcome the presumption against
> preemption by demonstrating Congress' "clear and manifest" intent
> to preempt State law.

*Id.* at 963 (internal quotation marks and citations omitted); *see also Buzzard v. Roadrunner*

*Trucking*, 966 F.2d 777, 783 (3d Cir. 1992) ("[U]niformity cannot take precedence over

Congress's primary goal of safety, nor can it defeat Congress's intent . . . to permit state common

law to develop more stringent design requirements in the interest of increased safety.").

Next, *Chamberlan* rejected the argument that a court-ordered recall would interfere with

the goal of providing an exclusive federal remedy.  314 F. Supp. 2d at 964.  Under Safety Act

section 30118(b), the Secretary of Transportation may decide whether a defect exists after an

interested person files a petition to begin a proceeding.  "If the Secretary decides there is a defect,

he or she is authorized to order manufacturers to notify consumers and remedy it."

*Chamberlan*, 314 F. Supp. 2d at 964 (citing 49 U.S.C. § 30118(b)).  But, as *Chamberlan* found,

the Safety Act does not contain "mandatory language to the effect that a petition to the Secretary is

a consumer's only means to seek remedies for defective equipment."  *Id.*  Instead, the savings

clause in section 30103(d) states that a remedy under section 30118(b) "is in addition to other

rights and remedies under other laws of the United States or a State."  Although the defendant

argued that the savings clause "cannot preserve the remedy of recalls because that remedy did not

exist prior to the 1974 amendments" to the Safety Act, the court found that prior to the 1974

Amendments, "courts enforced State-law-based injunctive remedies similar to recalls in the field

of vehicle safety."  *Id.*  Therefore, the court held that state law remedies are preserved under the

Safety Act.

United States District Court
Northern District of California

Moreover, *Chamberlan* conducted an in-depth evaluation of *In re Firestone/Bridgestone*, 153 F. Supp. 2d 935—a decision finding preemption that GM relies on heavily—and found its analysis unpersuasive. *Id.* at 965. The court similarly found unconvincing *Lilly*, 2002 WL 84603, another case on which GM relies. *Id.* at 967.

GM sets forth several arguments that the decisions holding no preemption rest on "flawed logic" and were wrongly decided. Reply at 7. First, GM disagrees with *Chamberlan*'s discussion of the Safety Act's uniformity goal. It argues that the "primary-secondary" distinction is incorrect because the preemption of state law recalls serves both objectives. Reply at 12. This argument fails to address the potential for preemption to prevent consumers from furthering the safety goal by pursuing state remedies, as discussed in *Chamberlan*, and is, therefore, unconvincing.

Second, GM calls into question *Chamberlan*'s analysis of the section 30103(d) savings clause. Reply at 10. It argues that the analysis "begs the question as to whether there was any state law recall remedy to save at the time the Recall Amendments were enacted." Reply at 10. *Chamberlan* expressly addressed this argument and found that prior to the 1974 amendments, courts granted injunctive relief similar to a recall in the field of transportation. 314 F. Supp. 2d at 959.

Third, GM argues that recalls should be treated differently than other remedies in the preemption analysis. Courts finding no preemption have stated that "in determining whether there is an actual conflict, it is not appropriate to 'split remedies.'" *Kent*, 200 F. Supp. 2d at 1217; *see also In re Toyota*, 754 F. Supp. 2d at 1197 (citing *Kent*). *Lassen* found arguments that Congress intended to preempt state law recall remedies were based on "the assumption that a recall remedy is so different from other remedies (such as damages) that they should be treated differently. 2016 WL 5868101, at *6. However, the court stated, "it makes little sense to split remedies in an implied preemption analysis because the question is whether the *cause of action* is preempted, not whether a particular remedy is preempted." *Id.* (original emphasis). "[U]nless there is evidence that Congress meant to 'split' a particular remedy for pre-emption purposes, it is assumed that the full cause of action under state law is available (or . . . pre-empted)." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 499 n.19 (1987). *Kent*, *In re Toyota*, and *Lassen* found no Congressional intent to

11

distinguish among remedies in the Safety Act.  I agree with their analysis.

GM argues that decisions finding no preemption ignore the difference between retrospective and prospective relief.  Reply at 8-9.  It characterizes a recall as "direct state regulation" of manufacturers' conduct, and "not the 'incidental regulatory pressure' of common law damages actions that state courts can entertain without unduly intruding upon and undermining federal purposes and objectives."  MTS at 23 (citing *Cipillone*, 505 U.S. at 537).  But while there are differences between damages and injunctive relief, GM has not pointed to anything in the Safety Act demonstrating a legislative intent to split remedies.

Next, GM asserts that *In re Toyota*, *Chamberlan*, and *Kent* "ignore the lack of any state regulation of vehicle defect notifications or recalls prior to 1974."  *Id.*  Each case explicitly notes this argument in its analysis on whether to apply the presumption against preemption and goes on to find no conflict preemption.  *See Chamberlan*, 314 F. Supp. 2d at 958-59; *In re Toyota*, at 1196; *Kent,* 200 F. Supp. 2d at 1216-18.

Finally, GM asserts that, unlike the cases finding no preemption, there is an actual conflict here.  GM argues that NHTSA was aware of a potential airbag defect through the multitude of consumer complaints and the technical service bulletins, but decided not to issue a recall.  Reply at 9.  Agencies generally have absolute discretion over enforcement decisions, so agency decisions not to enforce are usually unsuitable for judicial review.  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  Therefore, GM contends, a court-ordered recall would conflict with NHTSA's decision not to issue a recall.  Reply at 9-10.

Unlike in *Chamberlan*, where the court rejected a similar argument, plaintiffs have alleged a series of consumer complaints on NHTSA's website.  But the FAC contains no allegations that NHTSA conducted an investigation into the consumer complaints and made a decision not to issue a recall.  Looking to the FAC and drawing all reasonable inferences in favor of the plaintiffs, as I am required to do at this stage of the proceeding, there is no basis to infer that NHTSA made an affirmative decision not to issue a recall.  GM's "unsupported allegation of an NHTSA decision is not a sufficient basis upon which to invoke the bar to judicial review discussed in *Heckler* as a basis for dismissal."  *Chamberlan*, 314 F. Supp. 2d at 967.

United States District Court
Northern District of California

1      In sum, I agree with *Chamberlan* and subsequent decisions finding no conflict preemption.

2  The motion to strike (or dismiss) plaintiffs' request for injunctive relief and the supporting

3  allegations based on preemption grounds is DENIED.

4  **II.  MOTION TO DISMISS**

5      GM moves to dismiss the first three causes of action for fraudulent omission for failure to

6  state a claim.  GM also moves to dismiss the fourth and fifth claims for breach of the implied

7  warranty of merchantability, arguing plaintiffs failed to allege that the Class Vehicles are unfit for

8  their ordinary purpose and that vertical privity exists between the plaintiffs and GM.

9          **A.  Fraudulent Omission Claims—Claims 1, 2, and 3**

10      Plaintiffs allege that GM violated the CLRA, UCL, and common law by failing to disclose

11  the airbag defect in the Class Vehicles.  The CLRA prohibits "unfair methods of competition and

12  unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or

13  which results in the sale or lease of goods or services to any consumer." *Wilson v. Hewlett-*

14  *Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).  To state a fraudulent omission claim, a

15  plaintiff must plead an omission "contrary to a representation actually made by the defendant or an

16  omission of a fact the defendant was obliged to disclose." *Id.* at 1141. A plaintiff must also allege

17  that:  (1) the defendant had knowledge of the defect at the time of sale; (2) plaintiffs relied on the

18  omission; and (3) plaintiffs suffered an injury because of the omission. [6]  *See id.* at 1145; *Daniel*

19  *v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *Philips v. Ford Motor Co.*, No. 14-CV-

20  02989-LHK, 2015 WL 4111448, at *13 (N.D. Cal. July 7, 2015).

21  _____

22  [6] The reasoning with respect to the CLRA claim applies to the UCL claim.  *See MacDonald v.*
*Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097-98 (N.D. Cal. 2014) ("Generally, the standard for
23  deceptive practices under the fraudulent prong of the UCL applies equally to claims for
misrepresentation [or omission] under the CLRA, and courts often analyze the two statutes
24  together.").  Also, to sustain a California common law fraudulent omission claim, a plaintiff must
allege: "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a
25  duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or
suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been
26  unaware of the fact and would not have acted as he did if he had known of the concealed or
suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must
27  have sustained damage." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 454 (N.D. Cal. 2012).  GM's
arguments implicate the same elements of the common law, UCL, and CLRA claims.  Therefore,
28  this analysis also applies to the common law claim.

GM sets forth several arguments for why the fraudulent omission claims are insufficiently pleaded, including: (i) lack of allegations showing GM had knowledge of and a duty to disclose the alleged airbag defect; (ii) failure to allege that plaintiffs relied on specific GM advertising; (iii) an insufficient injury caused by the alleged fraudulent omission; and (iv) failure to meet the particularity requirement of Rule 9(b).

## 1.   Knowledge

To state a claim for fraudulent omission, a plaintiff "must sufficiently allege that a defendant was aware of a defect at the time of sale." *Wilson*, 668 F.3d at 1145. GM asserts that plaintiffs' allegations do not establish that GM knew of the alleged defect at the time plaintiffs purchased their vehicles. MTD at 8. Plaintiffs Waters, Bryde, and Northington purchased their vehicles in May, November, and December of 2010, respectively. FAC ¶¶ 12, 15, 18. Plaintiffs allege that GM had knowledge of the alleged defect in 2009 and 2010 through three technical service bulletins and GM's exclusive access to internal data. GM asserts that these factual allegations are insufficient to survive a motion to dismiss.[7]

### a.   Technical Service Bulletins

Plaintiffs allege that, starting in 2009, GM issued a series of Technical Service Bulletins ("TSBs") to address the airbag defect. FAC ¶¶ 30, 34. For example, on November 12, 2009, GM issued TSB No. PIC5281 regarding "Intermittent SIR Light On History Codes B0079 SYM08 And/Or B0080 SYM08." *Id.* ¶ 31. This TSB stated:

> Condition/Concern:
>
> A customer may comment the SIR light is on. The technician may find DTC [Diagnostic Trouble Code] B0079 SYM08 or B0080 SYM08 set as History Codes in the SDM [Sensing and Diagnostic Module].
>
> Recommendation/Instructions:

---

[7] GM also argues that the consumer complaints to NHTSA do not establish knowledge because only one complaint predates any of the named plaintiffs' vehicle purchases. *See* MTD at 2, Oxford Decl. ¶¶ 2-12. But plaintiffs state that the "complaints are included in the FAC to illustrate the manifestations of the Airbag defect and its widespread nature, not Defendant's pre-sale knowledge." Oppo. re MTD at 13. Therefore, I do not consider the consumer complaints in assessing allegations of GM's knowledge.

These codes set due to a Driver or Passenger Seat Position Sensor invalid signal. This could be caused by fault threshold level in the SDM programming that may be too sensitive.

If the DTCs B0079 SYM08 or B0080 SYM08 are not current codes, do not replace the Seat Position Sensors or SDM. Clear the history DTCs and return the vehicle to the customer.

If this/these DTCs are current please refer to the published Service Information for diagnostic and repair procedures.

Engineering is aware of this concern and working toward a fix.

*Id.* (alterations in FAC; FAC's added emphasis removed).

On March 23, 2010, GM issued TSB No. 10-09-41-001B regarding "Restraint—Airbag Readiness Light Illuminated." *Id.* ¶ 32. "This TSB states, 'Some customers may comment that the airbag readiness light (SIR) is illuminated' and that 'When diagnosing this condition, the technician may find DTC B0079 SYM08 or DTC B0080 SYM08 stored in the SDM. This may be caused by a calibration issue with the SDM.'" *Id.* Additionally, the TSB states, "When diagnosing the condition the technician may find a lack of communication with the SDM. This may be due to a logic lock up within the SDM." *Id.* It also instructs that the seat position sensors or the SDM should not be replaced if the DTCs are not current codes. *Id.*

In September 2010, GM issued TSB No. PI0241 regarding "SIR/Airbag Indicator Light On, DTCs B0074 and B0081 Set." *Id.* ¶ 33. This TSB states, "Some customers may comment on the SIR/Airbag indicator/light on the instrument panel cluster (IPC). Upon further investigation, the technician may find DTCs B0074 and B0081 set." *Id.* Plaintiffs allege that "[a]lthough the TSB states immediately below not to replace the PPS or the SDM for this concern, it also states that the PPS pad may have a tear in the sensor circuit."[8] *Id.* (alteration removed).

GM asserts that none of the TSBs mention a potential safety issue and it is not clear how the service bulletins relate to the alleged defect. MTD at 16. Moreover, GM argues that the first bulletin "does not say the 'fix' being worked on was for the possible sensor failure alleged by plaintiffs." MTD Reply at 7. Instead, to GM, it "appears the issue was a malfunctioning light

---

[8] "The PPS detects whether an adult is seated in the front passenger seat and, hence, whether the airbag should be on." FAC ¶ 33 n.3.

United States District Court
Northern District of California

1   caused by faulty programming, not any issue of 'functionality' of the airbag." *Id.*  GM

2   characterizes the second bulletin as addressing "SIR light illumination (not flashing) caused by

3   either SDM calibration or communication issues (not airbag sensors)."  MTD at 11.  As for the

4   third bulletin, GM notes that this was issued after Waters bought her vehicle (but before Bryde and

5   Northington made their purchases), and that it does not mention a "serious safety defect."  MTD

6   Reply at 7.  Overall, GM interprets the service bulletins as showing only possible airbag light

7   malfunctions, not airbag functionality issues.

8          "That [GM] is able to identify competing inferences from the same set of facts does not

9   mean that [p]laintiffs' claims should be dismissed." *MacDonald v. Ford Motor Co.*, 37 F. Supp.

10   3d 1087, 1093 (N.D. Cal. 2014) (Tigar, J.).  At this stage in the proceedings, I must decide

11   whether plaintiffs' allegations, accepted as true and drawing all reasonable inferences in favor of

12   plaintiffs, state a plausible claim.  *See Usher*, 828 F.2d at 561.

13          One plausible inference that can be drawn from the TSBs is that GM "was generally aware

14   of problems" with the airbag sensors and lights, and "that despite this awareness it continued to

15   sell vehicles containing the defective part." *Id.*  The first two TSBs discuss the same diagnostic

16   trouble codes, and the second TSB relates these codes to the "airbag readiness light."  The third

17   bulletin notes that the PPS pad, which plaintiffs allege "detects whether an adult is seated in the

18   front passenger seat and, hence, whether the airbag should be on," may have a tear in the sensor

19   circuit.  FAC ¶ 33 n.3.

20          Further, the first two bulletins were issued before any of the named plaintiffs made their

21   purchases, and the third was issued before both Bryde's and Northington's purchases.  Courts

22   have found that, even where TSBs post-date a purchase, "it is reasonable to infer that the TSBs

23   were proceeded by an accretion of knowledge" by the vehicle manufacturer. *Philips*, 2015 WL

24   4111448, at *9 (internal quotation marks omitted) (collecting cases and finding sufficient

25   allegations of knowledge from a May 2011 TSB where the plaintiffs purchased vehicles in

26   January 2010, October 2010, and March 2012).

27

28

### b.   GM's Exclusive Knowledge

Plaintiffs also allege, on information and belief, that GM acquired knowledge of the airbag

defect "as early as 2010, if not before," through sources unavailable to plaintiffs, including:

> pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to [GM's] network of dealers and directly to [GM], aggregate warranty data compiled from [GM's] network of dealers, testing conducted by [GM] in response to consumer complaints, and repair order and parts data received by [GM] from [GM's] network of dealers.

*Id.* ¶ 29.  GM argues these allegations are conclusory and do not "state the factual basis for the

belief."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

As the many cases cited by the parties demonstrate, "courts have addressed nearly identical

pleadings and are divided as to whether such allegations are sufficient to state a CLRA claim."

*MacDonald*, 37 F. Supp. 3d at 1095.  *Compare Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987,

998 (N.D. Cal. 2013) (Conti, J.) (finding sufficient a complaint alleging knowledge based on "pre-

release testing data, early consumer complaints . . ., dealership repair orders, testing conducted in

response to those complaints, and other internal sources"), *Falco v. Nissan N. Am. Inc.*, No. 13-cv-

0686, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013) (finding knowledge plausibly stated

based in part on allegations of "pre-production testing, preproduction design failure mode and

analysis data, production design failure mode and analysis data," "early consumer complaints,"

"aggregate warranty data," "testing . . . in response to consumer complaints," and "repair order

and parts data"); *with Wilson*, 668 F.3d at 1146-47 (finding allegations of knowledge of computer

defect based on defendant's "access to the aggregate information and data regarding the risk of

overheating" was "speculative and [did] not suggest how any tests or information could have

alerted" defendant to defect), *Grodzitsky v. Am. Honda Motor Co.,* No. 2:12-CV-1142, 2013 WL

690822, at *6 (C.D. Cal. Feb. 19, 2013) (finding insufficient complaint alleging knowledge based

on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in

response to complaints, replacement part sales data, aggregate data from Honda dealers, and other

internal sources."), *Herremans v. BMW of N. Am., LLC*, No. 14-cv-2363, 2014 WL 5017843, at

*17 (C.D. Cal. Oct. 3, 2014) (finding insufficient allegations of knowledge based on "internal

United States District Court
Northern District of California

1   testing, records of customer complaints, dealership repair records, and other internal sources"

2   insufficient).

3       As *MacDonald* noted, dispositive in the case law split "was whether the plaintiffs provided

4   additional information supporting their allegations."  37 F. Supp. 3d at 1095.  In *Ho* and *Falco*, the

5   plaintiffs also alleged knowledge based on TSBs.  In *Wilson*, *Grodzitsky*, and *Herremans*,

6   plaintiffs did not plead any other significant information pre-dating their alleged defective

7   purchases.  Here, plaintiffs have also alleged three TSBs.

8       Overall, GM's arguments that the TSBs and internal data do not establish knowledge may

9   prove true at a later stage of the proceeding.  But on this motion to dismiss, the allegations of three

10  TSBs and GM's exclusive access to internal data, taken together, permit a reasonable inference

11  that GM knew of the airbag defect at the time plaintiffs purchased their vehicles.

### 2.  Duty to Disclose

13      GM argues that plaintiffs have failed to allege facts showing that GM had a duty to

14  disclose.  "California courts have generally rejected a broad obligation to disclose, adopting

15  instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American*

16  *Honda Motor Co.*, 144 Cal. App. 4th 824, 51 Cal.Rptr.3d 118 (Ct. App. 2006)."  *Wilson*, 668 F.3d

17  at 1141.  To demonstrate a duty to disclose after the express warranty period, a complaint must

18  plead with particularity "factual allegations showing any instance of physical injury or any *safety*

19  *concerns* posed by the defect."  *Daugherty*, 144 Cal. App. 4th at 836 (emphasis added).

20      GM characterizes as merely speculative and conclusory plaintiffs' allegations that the

21  airbag defect is a safety concern.  Pointing to a lack of alleged physical injuries, GM argues that

22  there is "no widespread or systemic safety hazard," and that plaintiffs' allegations "support[]

23  nothing more than the truism that vehicle parts occasionally require repairs for which the owner is

24  responsible after the warranty expires."  MTD at 10.  Plaintiffs respond that a physical injury is

25  not required and it is "self-evident" that a defective airbag is a safety hazard.  Oppo. to MTD at 8.

26      Courts have found sufficiently pleaded safety concerns giving rise to a duty to disclose in a

27  variety of contexts.  For instance, in *Falk v. General Motors Corp.*, the court found alleged

28  defective speedometers constituted a safety hazard where the plaintiffs pleaded that it created "the

United States District Court
Northern District of California

risk of inadvertent speeding, driving at unsafe speeds, and accidents."  496 F. Supp. 2d 1088, 1096

n.* (N.D. Cal. 2007) (Alsup, J.).  In *Philips*, the court found a safety concern where an alleged

defective Electronic Power Assisted Steering (EPAS) system caused the "increased risk of losing

control of [plaintiffs'] vehicles when the EPAS system fails."  2015 WL 4111448, at *10.  *See*

*also Reniger v. Hyundai Motor America*, 122 F. Supp. 3d 888 (N.D. Cal. 2015) (Conti, J.) (safety

hazard where engine stalls and power steering and brakes are lost); *Falco*, 2013 WL 5575065, at

*3-4 (safety concern where alleged defective Time Chain Tensioning System causes "an inability

to accelerate, maintain speed, and idle smoothly, and potentially catastrophic engine failure");

*Erlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (safety concern where

alleged defective windshields in a roll-over accident can "become dislodged, compromising roof-

crush resistance and causing serious head and neck injuries, failure of the passenger side airbag to

deploy, or ejection of passengers from the vehicle").

Here, plaintiffs allege that the airbag defect "presents a grave safety hazard because it can

cause the right front passenger frontal airbag to fail to deploy in the event of a crash, resulting in

serious injury or death."  FAC ¶ 28.  This allegation is not speculative or conclusory; it is amply

supported by numerous consumer complaints making similar assertions to NHTSA.  *See, e.g.,*

FAC at 11 (NHTSA ID No. 10469423) ("My passenger side airbag does not recognize when I

have a passenger that meets the weight requirements . . . This [poses] a threat to my passengers

and could cause malfunction in any of my airbags."), *Id.* at 14 (NHTSA ID No. 10596834)

("When a passenger is in the seat, the airbag will not deploy."), *Id.* at 17 (NHTSA ID No.

10614729) ("The risk I ran was the airbag not deploying in the event of an accident or the airbag

deploying at a time that I didn't want it to."); *Id.* at 21 (NHTSA ID No. 10663259) (noting airbag

warning light on and "service department said it would make air bags inoperable, wouldn't deploy

airbags in case of accident"); *Id.* at 27-28 (NHTSA ID No. 10849741) (consumer given quote for

replacement parts "as the airbag might not deploy in the event of an accident").  The risk that an

airbag will not deploy during an accident creates a safety concern that is similarly serious to those

caused by defective speedometers, power steering systems, engines, time chain tensioning

systems, and windshields.  Thus, plaintiffs have plausibly alleged that the airbag defect is a safety concern.

GM also argues that the allegations cannot demonstrate a safety hazard because NHTSA did not order a recall despite being aware of the potential defect through the consumer complaints and GM's technical service bulletins.  MTD Reply at 3.  However, as discussed above, GM's allegation that NHTSA made a decision not to act on these complaints is unsupported.  Therefore, this argument also fails.

### 3.  Reliance

GM argues that plaintiffs fail to sufficiently plead a fraudulent omission claim because plaintiffs do not allege that they viewed and relied on specific GM advertising.  MTD at 12.  "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct . . . A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently.  That one would have behaved differently can be presumed, or at least inferred, when the omission is material."  *Daniel*, 806 F.3d at 1225 (internal citations and quotation marks omitted).

It can be inferred here that the alleged omission was material because, as discussed above, it relates to a safety concern.  *See id.* ("Alleged defects that create 'unreasonable safety risks' are considered material.").  Plaintiffs have also shown that, had the omitted information been disclosed, they would have been aware of it.  In *Daniel*, the Ninth Circuit noted that there are "various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made."  *Id.* at 1226.  The plaintiffs in that case had not viewed any advertisements, but the court found that they had sufficiently alleged they would have been aware of a defect if disclosed because they "presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their [vehicles]."  *Id.*  As in *Daniel*, the plaintiffs here have each alleged that they interacted with a GM dealer sales representative.  FAC ¶¶ 12, 15, 18.  Reliance is adequately pleaded.

United States District Court
Northern District of California

### 4. Injury

GM asserts that plaintiffs have not sufficiently alleged a harm caused by the fraudulent omission. MTD at 12-13. Consumer claims under the CLRA, UCL, and common law fraudulent omission must allege an injury caused by the defendant. *Philips*, 2015 WL 4111448, at *13 (collecting cases). The CLRA authorizes suits by a consumer who "suffers any damage." Cal. Civ. Code § 1780. The UCL permits suits by a person who has "lost money or property." Cal. Bus. & Prof. Code § 17204.

Here, plaintiffs allege they incurred costs related to diagnosing and repairing the airbag defect. FAC ¶ 7. In particular, Waters spent $115 for a diagnosis, Bryde spent $699.56 to replace the passenger airbag sensor, and Northington paid $100 for a repair. *Id.* ¶¶ 13, 16, 19. Plaintiffs also allege that, had they known about the defect, they would not have purchased the Class Vehicles or would have paid less for them. *Id.* ¶ 8. As a result of the alleged omission, plaintiffs claim they suffered "loss of money, property, and/or loss in the value of their Class Vehicles." *Id.*

GM argues that plaintiffs have not adequately pleaded an injury from the omission because they have not alleged a physical injury. In fact, plaintiffs have excluded from the proposed Classes anyone who has suffered a physical injury. FAC ¶ 50. It argues that allegations of possible future injuries do not constitute damage, relying on the principle that "[n]o injury, no tort, is an ingredient of every state's law." MTD Reply at 11 (citing *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002). This argument fails because both the CLRA and UCL authorize suits for economic injuries resulting from consumer fraud.

GM also argues that plaintiffs have not alleged that "GM was legally responsible for airbag sensor diagnosis or repair costs incurred after expiration of GM's limited new vehicle warranty." MTD at 13. GM cites several decisions for the proposition that, after the expiration of an express warranty, out-of-pocket costs for diagnosis or repair do not constitute actionable damage unless a defendant had a duty to disclose a defect. MTD Reply at 11. GM argues that because it did not have a duty to disclose the alleged defect, plaintiffs' allegations of economic damages are insufficient to state claims for fraudulent omission. MTD at 13. However, as explained above,

plaintiffs have plausibly alleged that GM had a duty to disclose.  The allegations of out-of-pocket expenses are, therefore, sufficient to plead an injury.

### 5.  Sufficiency of Allegations under Rule 9(b)

GM asserts that plaintiffs failed to sufficiently plead a fraudulent omission claim under Rule 9(b) because they did not "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff[s] relied on to make [their] purchase[s] and that failed to include the allegedly omitted information."  MTD at 14-15, 18 (citing *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) (Patel, J.); *Eisen v. Porsche Cars N. Am., Inc.*, No. 11-cv-9405, 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012); *Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1325-26 (C.D. Cal. 2013)).

"As other courts have recognized, the *Marolda* requirements are not necessarily appropriate for all cases alleging a fraudulent omission." *Overton v. Bird Brain, Inc.*, No. 11-cv-1054, 2012 WL 909295, at *6 (C.D.Cal. Mar. 15, 2012).  "Typically, '[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged,' but claims based on an omission 'can succeed without the same level of specificity required by a normal fraud claim.'"  *MacDonald*, 37 F. Supp. 3d at 1096 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997); *Baggett v. Hewlett–Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D.Cal.2007)). "This is because a plaintiff alleging an omission-based fraud will 'not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim.'"  *Id.*

In *MacDonald*, plaintiffs brought claims under the CLRA and UCL against a vehicle manufacturer for failure to disclose a coolant pump defect and the defendant argued the plaintiffs had not met the *Marolda* requirements.  37 F. Supp. 3d at 1090.  The court distinguished the facts of *Marolda*, where the dispute concerned an alleged omission within a particular advertisement that the plaintiff had failed to adequately describe.  *Id.*  It went on to hold that the plaintiffs satisfied Rule 9(b), stating:

> Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to

the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles.

37 F. Supp. 3d at 1096.

Like other courts in this district, I find *MacDonald* more on point than *Marolda*. *See Philips*, 2015 WL 4111448, at *12; *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *3 (N.D. Cal. Aug. 19, 2015). And although the facts of *Asghari* and *Eisen* are similar to those at issue here—the alleged failure of a manufacturer to disclose a vehicle defect—those decisions applied *Marolda* without looking to its facts. *MacDonald* is more persuasive than *Asghari* and *Eisen*.

Accordingly, the same "who, what, when, where, and how" analysis applies here. Plaintiffs have identified the "who" (GM); the "what" (knowing about, yet failing to disclose the alleged airbag systems defect); the "when" (from the time of sale of the first vehicle to the present day); the "where" (the various channels through which GM sold the Class Vehicles, including its dealers where plaintiffs purchased their vehicles); and the "how" (if plaintiffs had known of the alleged defect, they would have not purchased or leased the Class Vehicles, or would have paid less). Plaintiffs have sufficiently alleged a fraudulent omission under Rule 9(b).

In sum, the motion to dismiss Claims 1, 2, and 3 is DENIED.

## B. Breach of Implied Warranty of Merchantability—Claims 4 and 5

Claim 4 alleges breach of the implied warranty of merchantability under the Song-Beverly Warranty Act and California Commercial Code section 2314. Claim 5 alleges violation of the Magnuson-Moss Warranty Act, which "creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty." *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005). The "disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

### 1. Fitness for Ordinary Purpose

GM moves to dismiss Claims 4 and 5 for breach of implied warranty, arguing plaintiffs failed to plead that the alleged airbag defect made plaintiffs stop driving their cars, the airbags have failed to deploy when they should, or the defect made the vehicles otherwise unfit for their

ordinary purpose of providing transportation.  MTD at 15; MTD Reply at 12.  Plaintiffs assert that the alleged airbag defect makes the Class Vehicles unfit for their ordinary purpose because the "airbag is a safety feature that can mean the difference between life and death in an accident." Oppo. to MTD at 22.  GM replies that plaintiffs "have not alleged that their cars need any repairs to continue being operable."  MTD Reply at 12.

Under the Song-Beverly Act, "every retail sale of 'consumer goods' in California includes an implied warranty by the manufacturer and the retail seller that the goods are 'merchantable' unless the goods are expressly sold 'as is' or 'with all faults.'"  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) (citing Cal. Civ. Code §§ 1791.3, 1792).  "The core test of merchantability is fitness for the ordinary purpose for which such goods are used."  *Id.* (citation omitted).  "Such fitness is shown if the product is in safe condition and substantially free of defects."  *Id.* (internal citation and quotation marks omitted); *see also Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014) ("[A]n important consideration under the implied warranty is consumer safety.").  The "minimum guarantee [of safety] in the implied warranty of merchantability protects not only the vehicle purchaser, but other motorists, passengers, pedestrians, and the public generally."  *Brand*, 226 Cal. App. 4th at 1547.

Courts have found a range of defects that make a vehicle unfit for its ordinary purpose.  In *Isip v. Mercedes-Benz USA, LLC*, the court concluded that a "vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."  155 Cal. App. 4th 19, 27 (2007).  In *Brand*, the court found that a "reasonable jury could conclude that a vehicle sunroof that opens and closes on its own creates a substantial safety hazard."  226 Cal. App. 4th at 1547 (emphasis removed).  Another court held that "'a vehicle that whines, buzzes, fails to accelerate and maintain speed, experience engine failure, and ultimately requires engine repairs' is unmerchantable.'"  *Falco*, 2013 WL 5575065, at *9.  And one court has found a plausible implied warranty claim based on allegations that "the engine is unable to properly utilize the engine oil, resulting in consumption of 'abnormally high amounts of oil,' . . . . creates a safety risk because it can cause engine failure while the vehicle is in operation."  *Asghari*, 42 F. Supp. 3d at 1339.

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Here, the FAC contains allegations by the named plaintiffs and numerous consumer

2   complaints indicating that the front passenger airbag light and sensor switches on and off.  This

3   sensor "detects whether an adult is seated in the front passenger seat and hence, whether the airbag

4   should be on."  FAC ¶ 33 n.3.  Plaintiffs allege that the airbag warning light turning on and off

5   indicates that the airbag may fail to deploy in a crash.  *Id.* ¶ 3.  And the defect is alleged to be

6   "particularly dangerous" because it is nonobvious to consumers who may not understand or notice

7   the airbag light, causing them to transport passengers in the front seat without a functioning

8   airbag.  *Id.* ¶ 4.  I conclude that plaintiffs have plausibly alleged that the Class Vehicles are not in

9   a "safe condition" and, therefore, not fit for their ordinary purpose because of the alleged airbag

10  defect.  *See Mexia*, 174 Cal. App. 4th at 1303.

## 2.  Vertical Privity

12      Lastly, GM argues that Claim 4 for breach of the implied warranty of merchantability

13  under California Commercial Code section 2314 fails because plaintiffs do not allege vertical

14  privity with GM.[9]  MTD at 16.  Under California Commercial Code section 2314, "a plaintiff

15  asserting breach of warranty claims must stand in vertical contractual privity with the defendant."

16  *Clemens*, 534 F.3d at 1023.  "A buyer and seller stand in privity if they are in adjoining links of

17  the distribution chain."  *Id.*  Generally, an end consumer "who buys from a retailer is not in privity

18  with a manufacturer." *Id.*

19      Plaintiffs have not alleged vertical privity, but argue that an exception applies "where a

20  plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied

21  warranty of merchantability."  *In re Toyota*, 754 F. Supp. 2d at 1185.  As GM notes, in a previous

22  decision, I declined to recognize the third-party beneficiary exception under California law,

23  interpreting *Clemens* as foreclosing this exception.  *Long v. Graco Children's Prods. Inc.*, No. 13-

24  cv-01257, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013).  Other courts reviewing the same

25  issue have interpreted *Clemens* more narrowly and found that a third-party beneficiary exception

27  [9] Claim 4 alleges breach of implied warranty under the Song-Beverly Consumer Warranty Act and
California Commercial Code § 2314.  The vertical privity argument applies only to the California
28  Commercial Code.  As GM acknowledges, the Song-Beverly Act does not require vertical privity
for implied warranty claims, nor does the Magnuson-Moss Act (Claim 5).  MTS Reply at 13 n.5.

United States District Court
Northern District of California

exists.  *See In re Toyota*, 754 F. Supp. 2d at 1184-85; *In re MyFord Touch Consumer Litig.*, 46 F.

Supp. 3d 936, 984 (N.D. Cal. 2014) (Chen, J.); *see also In re Google Phone Litig.*, No. 10-cv-

01177-EJD, 2012 WL 3155571, at *9 (N.D. Cal. Aug. 2, 2012) (citing *In re Toyota* and

recognizing exception); *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, No. 11-cv-0299

PJH, 2012 WL 5199458, at *13 (N.D. Cal. Oct. 22, 2012) (same).

In *Clemens*, the plaintiff brought a claim for breach of the implied warranty of

merchantability against a vehicle manufacturer, alleging a defective head gasket.  534 F.3d at

1022.  The Ninth Circuit recognized that an exception to the privity requirement "arises when the

plaintiff relies on written labels or advertisements of a manufacturer."  *Id.* at 1023.   It also found

that "other exceptions arise in special cases involving foodstuffs, pesticides, and pharmaceuticals,

and where the end user is an employee of the purchaser."  *Id.*  The plaintiff did not claim any of

these exceptions, but argued that "similar equities" supported an exception to the privity

requirement in his case.  *Id.*  The court "decline[d] this invitation to create a new exception,"

noting that "California courts have painstakingly established the scope of the privity requirement

under California Commercial Code section 2314, and a federal court sitting in diversity is not free

to create new exceptions to it."  *Id.* at 1024.

Courts recognizing the third-party beneficiary exception point out that the *Clemens*

plaintiff did not argue for application of the third-party beneficiary exception and the court did not

consider its existence.  *See In re MyFord Touch*, 46 F. Supp. 3d at 984; *In re Toyota*, 754 F. Supp.

2d at 1185.  Also, California Civil Code section 1559 allows a third-party beneficiary to enforce a

contract made expressly for his or her benefit.  Interpreting this statute, "California cases permit a

third party to bring an action even though he is not specifically named as a beneficiary, if he is

more than incidentally benefitted by the contract."  *Gilbert Fin. Corp. v. Steelform Contracting

Co.*, 82 Cal. App. 3d 65, 69-70 (1978).  Upon further consideration, I conclude that the third-party

beneficiary exception is viable under California law.

GM argues that plaintiffs do not meet the third-party beneficiary exception because

plaintiffs do not plausibly allege that the GM dealers are GM's agents.  Reply at 13.  Plaintiffs

allege that they bought their vehicles from and took their vehicles to GM's dealers when they had

United States District Court
Northern District of California

problems with their airbag lights and sensors. FAC ¶¶ 12-19. They also allege that they contacted GM "and/or its authorized agents for vehicle repairs" concerning the alleged airbag defect. *Id.* ¶ 46. Additionally, the FAC states that GM issued TSBs to its dealers, instructing how to deal with airbag light and sensor issues. *Id.* ¶ 34. From these allegations, it is reasonable to infer that the dealers are GM's agents. *See Precht v. Kia Motors Am., Inc.*, No. 14-cv-1148, 2014 WL 10988343, at *10 (C.D. Cal. Dec. 29, 2014) (finding third-party beneficiary exception adequately pleaded where plaintiff alleged he purchased vehicle from an authorized dealership).

The motion to dismiss Claims 4 and 5 is DENIED.

## CONCLUSION

Plaintiffs' request for injunctive relief is not preempted by the Safety Act. The motion to strike is DENIED. The motion to dismiss Claims 1 through 5 for failure to sufficiently state a claim is also DENIED.

**IT IS SO ORDERED**.

Dated: November 17, 2016



WILLIAM H. ORRICK
United States District Judge